Judgment rendered March 3, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,757-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SANDRA POWELL                                    Plaintiff-Appellant

versus

GEORGE MERRIMAN, M.D.                            Defendant-Appellee

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 527,835

Honorable Craig O. Marcotte, Judge

* * * * *

LAW OFFICE OF SUSAN E. HAMM               Counsel for Appellant
By:  Susan E. Hamm

NELSON & HAMMONS, APLC                    Counsel for Appellee
By:  John L. Hammons
     Cornell R. Flournoy

* * * * *

Before MOORE, PITMAN, and GARRETT, JJ.

**PITMAN, J**.

Plaintiff-Appellant Sandra Powell appeals the trial court's judgment in favor of Defendant-Appellee George Merriman, M.D. For the following reasons, we affirm.

## FACTS

On January 29, 2007, Ms. Powell filed a claim with the Medical Review Panel (the "Panel"). She alleged that Dr. Merriman deviated from the applicable standard of appropriate medical care and was negligent in her care and treatment when he performed a laparoscopic cholecystectomy with an intraoperative cholangiogram on her on January 20, 2006.[1]

On October 17, 2008, the Panel unanimously found that the evidence did not support the conclusion that Dr. Merriman breached the applicable standard of care as charged in Ms. Powell's complaint. In its written reasons for this conclusion, the Panel stated, in part:

> This panel is of the opinion that Dr. Merriman injured the common bile duct during the laparoscopic cholecystectomy; however, this error is not a deviation from the standard of care.
> An injury to the bile duct is a well-known complication of a laparoscopic cholecystectomy. A common bile duct injury occurs in approximately 1 of every 200 cholecystectomies. The patient was informed of this risk, specifically noted in the informed consent, which was signed by Ms. Powell pre-operatively . . . . The panel is satisfied that the informed consent was appropriate.
> A review of Ms. Powell's medical records reveals no breach in the standard of care. Dr. Merriman, an experienced surgeon, was satisfied with the observed anatomy and removed the gallbladder. His error of anatomical identification was not malpractice.
> Furthermore, the operative cholangiogram report dictated by the radiologist . . . corroborates the description given by Dr. Merriman in the operative report, wherein he describes a probable cystic duct obstruction.

---

[1] In layman's terms, a cholecystectomy is a surgical procedure to remove the gallbladder. An intraoperative cholangiogram is an X-ray dye test that is performed during the surgery to visualize the biliary tree.

> . . . The panel is satisfied that the surgery was conducted in a safe and acceptable manner. The pre and post-operative treatment of Ms. Powell was also appropriate.
>
> The panel is of the opinion that Dr. Merriman did not breach the standard of care in the treatment of Ms. Powell.

On January 15, 2009, Ms. Powell filed a petition for damages against Dr. Merriman. She alleged that on January 20, 2006, he performed on her a laparoscopic cholecystectomy. On February 6, 2006, she presented to his office appearing jaundiced. An ERCP[2] showed a bile duct injury, and she underwent a procedure to repair the injury. She contended that she sustained significant and permanent damage as a result of the treatment provided by Dr. Merriman and that his treatment fell below the standard of care.

On April 29, 2009, Dr. Merriman filed an answer and denied the allegations made by Ms. Powell. He stated that he was not negligent, and he denied any and all liability and responsibility to her. He noted that the Panel found that he did not fail to meet the standard of care. He stated that the injury sustained by Ms. Powell is a well-known complication of the procedure and that she was informed and assumed that risk.

A bench trial was conducted on December 3 and 4, 2019.

Ms. Powell testified that she went to the emergency room on or about January 18, 2006, and Dr. Merriman performed gallbladder surgery on her the next day. Following surgery, she was not in pain, but four or five days after the procedure, she began to have stomach cramps. A week later her skin began to itch, her eyes yellowed and her bowel movements were abnormal. Dr. Merriman ordered tests, and she was admitted to the hospital on February 8, 2006. On February 15, 2006, Dr. Robert McMillan

---

[2] An ERCP, i.e., an endoscopic retrograde cholangiopancreatography, is an X-ray dye test.

performed surgery on her to reconstruct the bile duct, and she remained in the hospital until February 22, 2006. She noted that while in the hospital, she could not eat or drink, that she was fed through a tube and that she was in pain. She testified that at the time of her surgery, she was 42 years old and worked as the night supervisor for a linen company. She stated that following the surgeries, she could no longer perform her job due to its physical nature and that she had been unable to work since. She testified that she is not as active as she used to be, she cannot lift anything, she has abdominal pain, she cannot eat fried food and her children care for her.

Miranda Powell, Ms. Powell's daughter, testified that after the gallbladder removal surgery, her mother seemed fine at first, but in the following two weeks, her skin yellowed and itched, her eyes yellowed and she had nausea and was vomiting. Her mother underwent a second surgery and was in pain afterwards. She noted that her mother's health began to decline—she was not as active, was not able to return to work and could not continue living on her own.

Marco J. Bonta, M.D., was accepted as an expert in the field of general surgery and testified that he had experience performing laparoscopic cholecystectomies. He reviewed Ms. Powell's medical records, the deposition of Dr. Merriman and the Panel's opinion. He detailed the anatomy and functions of the gallbladder, the hepatic ducts, the cystic duct and the common bile duct. He testified that when performing the cholecystectomy on Ms. Powell, Dr. Merriman divided the incorrect structure, i.e., the common bile duct rather than the cystic duct, which obstructed Ms. Powell's liver output so that bile could not properly drain. He found that it is not within the standard of care to cut the common bile

3

duct in half and that this injury is not an acceptable complication. Regarding the Panel's data on the incidence of common bile duct injuries, he stated that the numbers included all types of injuries, not only the transection of the common bile duct.

Dr. Bonta testified that Ms. Powell's medical records showed an inflammation of the gallbladder, which complicated the cholecystectomy because the tissues planes were swollen and more difficult to identify. He stated that a cholangiogram, i.e., an X-ray dye test of the biliary tree, can be used during a cholecystectomy to identify any obstructions of the common bile duct and to identify structures in the biliary tree. He explained that in Ms. Powell's case, a gallstone was obstructing her cystic duct, which prevented the dye from the cholangiogram to go beyond the stone. He further testified that this incompletion of the cholangiogram was not itself a violation of the standard of care by Dr. Merriman. However, he detailed five alternative procedures Dr. Merriman could have performed to avoid causing the injury at issue and stated that it was below the standard of care for Dr. Merriman not to attempt one of these alternatives.

On cross-examination, Dr. Bonta noted trauma and cancer as examples of when injuries to the common bile duct during a cholecystectomy would not be a breach of the standard of care. He agreed that an injury to the common bile duct is a known risk of the laparoscopic cholecystectomy procedure. He maintained that in this case, the complete transection of the common bile duct by Dr. Merriman was below the standard of care.

4

Ms. Powell rested her case, and Dr. Merriman presented his witnesses.

Dr. Merriman was accepted as an expert in the field of general surgery with a subspecialty in bariatric surgery. He testified that in 2006, Ms. Powell presented to the emergency room with biliary colic, and a CT scan showed evolving acute cholecystitis, i.e., inflammation of the gallbladder. He determined that the most appropriate treatment was a laparoscopic cholecystectomy and explained his reasoning. He detailed the procedure he performed on Ms. Powell. He noted that during the cholecystectomy, he performed a gallbladder cholangiogram, which is different from a cystic duct cholangiogram on which Dr. Bonta based his opinions and testimony. He stated that due to obstruction of the cystic duct, the dye from the cholangiogram did not flow through the duct. He testified that the procedure was uneventful and that Ms. Powell appeared well postoperatively and was discharged the next day. At her follow-up appointment two weeks later, Ms. Powell was jaundiced, which told Dr. Merriman that there was either an obstruction of or an injury to the common bile duct. An ERCP showed a bile duct injury, and then Dr. Merriman consulted with Dr. McMillan for his hepatobiliary knowledge.

Dr. Merriman further testified that an injury to the common bile duct is a recognized risk of the procedure. He estimated that in his 28-year career, he performed 800 to 1,000 laparoscopic cholecystectomies and noted that he only experienced a common bile duct transection in Ms. Powell's case. He agreed that this was a lower rate than the national rate provided in the Panel's opinion, i.e., approximately one injury in 200 procedures.

On cross-examination, Dr. Merriman agreed that during the procedure, he misidentified Ms. Powell's cystic duct. He explained his

5

decisions during the procedure, including to perform a gallbladder cholangiogram rather than cholangiogram of the cystic duct.

Kevin C. Marler, M.D., who was accepted as an expert in the field of general surgery and surgical oncology, testified that he has performed at least 1,500 cholecystectomies. He served on the Panel in this case, which unanimously found that the evidence did not support the conclusion that Dr. Merriman failed to meet the applicable standard of care. He stated that an injury to the common bile duct does not necessarily prove substandard care, that such an injury is a recognized risk of the procedure, that the misidentification of a structure by a physician is a recognized risk and that a common bile duct injury can occur when a surgeon performs a procedure with precision. He discussed the statistics mentioned in the Panel's opinion that approximately one injury occurs in every 200 procedures and noted that Dr. Merriman's complication rate is lower than the statistical national rate. He stated that there were no indications in the medical records that an injury was known during the procedure. He noted that the use of cholangiograms is not mandated and that its use is an issue of medical judgment based upon the circumstances of an individual patient.

On cross-examination, Dr. Marler stated that difficulty in identifying an anatomic structure does not relieve a surgeon of providing treatment within the standard of care. He agreed that Dr. Merriman's transection of the common bile duct was an error. He noted that injuries considered in the Panel's statistics include different kinds of injuries to the common bile duct, not just a transection. He stated that Dr. Merriman is an experienced surgeon who thought this was a straightforward case.

6

Robert McMillan, M.D., accepted as an expert in the field of general surgery with a subspecialty in transplantation surgery, testified that Dr. Merriman referred Ms. Powell to him due to a common bile duct injury. He detailed the Roux-en-Y procedure he performed on Ms. Powell to repair the common bile duct. He stated that there were no complications and that Ms. Powell recovered well postoperatively. During his assessment of Ms. Powell, he did not find any evidence of substandard surgical technique or care by Dr. Merriman.

On cross-examination, Dr. McMillan testified that misidentification of a structure is not a breach of the standard of care nor is it malpractice. He stated that a surgeon has to identify the critical structures as to what he thinks they are at the time. He agreed that difficulty in identifying a structure does not relieve a physician from providing treatment within the standard of care.

On December 16, 2019, the trial court filed a judgment. It found that Dr. Merriman did not deviate from the standard of care and that no malpractice occurred and dismissed the case with prejudice.

Ms. Powell appeals the judgment of the trial court.

## DISCUSSION

### *Standard of Care*

In her first assignment of error, Ms. Powell argues that the trial court erred in finding that Dr. Merriman did not breach the standard of care. She contends that her medical records and the credible testimony of Dr. Bonta prove that Dr. Merriman breached the standard of care by cutting her common bile duct during the procedure.

Dr. Merriman argues that the trial court did not err in finding that he complied with the applicable standard of care in his treatment of Ms. Powell. He contends that Ms. Powell did not carry her burden of proving the standard of care or the breach of the standard of care.

Regarding medical malpractice actions based on the negligence of a physician, La. R.S. 9:2794(A) provides that the plaintiff has the burden of proving:

> (1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians . . . licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians . . . within the involved medical specialty.
> (2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
> (3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

In other words, the plaintiff has the burden of proving, by a preponderance of the evidence, (1) that the doctor's treatment fell below the standard of care expected of a physician in his medical specialty; and (2) the existence of a causal relationship between the alleged negligent treatment and the injury sustained. *Fusilier v. Dauterive*, 00-0151 (La. 7/14/00), 764 So. 2d 74, *citing Gordon v. Louisiana State Univ. Bd. of Sup'rs*, 27,966 (La. App. 2 Cir. 3/1/96), 669 So. 2d 736, *writ denied*, 96-1038 (La. 5/31/96), 674 So. 2d 263. A physician is required to exercise that degree of skill ordinarily employed under similar circumstances by others in the profession and also to use reasonable care, diligence and judgment. *Hastings v. Baton*

*Rouge Gen. Hosp.*, 498 So. 2d 713 (La. 1986).  A physician is not required to exercise the highest degree of care possible; rather, his duty is to exercise the degree of skill ordinarily employed by his professional peers under similar circumstances.  *Gordon v. Louisiana State Univ. Bd. of Sup'rs*, *supra*.  The law does not require absolute precision from a physician.  *Id.* The mere fact that an injury occurred does not raise a presumption that the physician was negligent.  *Hays v. Christus Schumpert N. Louisiana*, 46,408 (La. App. 2 Cir. 9/21/11), 72 So. 3d 955.

Appellate review of a trial court's findings in a medical malpractice action is limited.  *Van Buren v. Minor*, 51,960 (La. App. 2 Cir. 4/11/18), 247 So. 3d 1040, *writ denied*, 18-0768 (La. 9/21/18), 252 So. 3d 911.  The manifest error standard applies to the review of medical malpractice cases, and a court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong.  *Moore v. Smith*, 48,954 (La. App. 2 Cir. 5/21/14), 141 So. 3d 323, *citing Crockham v. Thompson*, 47,505 (La. App. 2 Cir. 11/14/12), 107 So. 3d 719.

Expert witnesses who are members of the medical profession are needed to establish the applicable standard of care, whether the standard of care was breached by the defendant doctor's conduct and whether that breach resulted in injury to the plaintiff.  *Richardson v. Cotter*, 51,637 (La. App. 2 Cir. 9/27/17), 245 So. 3d 136; *Jones v. Hernandez*, 38,818 (La. App. 2 Cir. 8/18/04), 880 So. 2d 245, *writ denied*, 04-2319 (La. 11/19/04), 888 So. 2d 203.  Where there are conflicting expert opinions concerning the defendant's compliance with the standard of care, the reviewing court will give great deference to the conclusions of the trier of fact.  *Van Buren v.*

*Minor*, *supra*. The effect and weight to be given to expert testimony is within the broad discretion of the trial court. *Jones v. Hernandez, supra*.

The threshold element that a medical malpractice claimant must establish in an action against a specialist such as Dr. Merriman is that the conduct of the physician fell below the applicable standard of care. *Jones v. Hernandez, supra*. To establish the standard of care applicable to general surgeons who perform gallbladder surgeries and to prove that Dr. Merriman's treatment fell below the standard of care expected of a physician in his medical specialty, Ms. Powell presented the expert testimony of Dr. Bonta, who testified that Dr. Merriman's transection of Ms. Powell's common bile duct fell below the standard of care and that the injury was not an acceptable complication.

To the contrary, Dr. Merriman, Dr. Marler and Dr. McMillan all testified that Dr. Merriman did not breach the standard of care in his treatment of Ms. Powell. Dr. Merriman admitted that he misidentified Ms. Powell's cystic duct, but stated that the injury to the common bile duct is a recognized risk of the cholecystectomy. Similarly, Dr. Marler testified that an injury to the common bile duct does not necessarily prove substandard care and that the misidentification of a structure by a physician is a recognized risk of the procedure. Dr. McMillan also stated that misidentification of a structure is not a breach of the standard of care. Further, the Panel unanimously found that Dr. Merriman did not breach the standard of care. It stated that the errors, i.e., Dr. Merriman's anatomical misidentification and injuring of the common bile duct, were not deviations from the standard of care. It noted that such an injury is a well-known

complication of a laparoscopic cholecystectomy, that she was informed of this risk and that Ms. Powell signed a consent form acknowledging the risk.

The record in this case supports the trial court's finding of no breach of the applicable standard of care. Because there were conflicting expert opinions concerning Dr. Merriman's compliance with the standard of care, the trial court made inferences of fact and determined which expert opinions and testimonies were most credible. The trial court's choice between conflicting expert opinions was reasonable; and, therefore, its finding is not manifestly erroneous or clearly wrong. The evidence in this case justifies the trial court's determination that Ms. Powell failed to carry her burden of proof under La. R.S. 9:2794(A) that Dr. Merriman breached the applicable standard of care in his treatment of her.

Accordingly, this assignment of error lacks merit.

*Expert Witnesses*

In her second assignment of error, Ms. Powell argues that the trial court erred in giving weight to the testimony of Dr. Merriman's experts. She contends that the defense's presentation of expert testimony that Dr. Merriman is an "experienced surgeon" is not sufficient to support the conclusion that he did not breach the standard of care. She contends that Dr. Bonta's testimony and her medical records are adequate objective evidence to meet her burden of proof.

Dr. Merriman details the testimony of Dr. Marler, which supports the contention that he was not negligent in his care and treatment of Ms. Powell and that his actions complied with the standard of care. He also refutes portions of Dr. Bonta's testimony and contends that Dr. McMillan's testimony should be given greater weight as a treating physician.

11

As discussed above, the trial court did not err in its determination that Ms. Powell failed to meet her burden of proof that Dr. Merriman breached the standard of care. The trial court reviewed all the evidence in this case, including hearing the testimony of each witness. It is within the trial court's discretion to determine the effect and weight given to expert testimony. *Jones v. Hernandez*, *supra*.

Accordingly, this assignment of error lacks merit.

*Opinion of the Panel*

In her third assignment of error, Ms. Powell argues that the trial court erred in admitting into evidence portions of the Panel's opinion. She states that the statistic regarding the number of common bile duct injuries occurring in gallbladder surgeries was not relevant because the Panel cited no authority for it and the defense laid no foundation for the evidence.

Dr. Merriman contends that the Panel's opinion complies with statutory requirements and is admissible evidence. He states that there is no requirement that the Panel identify the specific source of its statistics.

Any report of the expert opinion reached by the medical review panel shall be admissible as evidence in any action subsequently brought by the claimant in a court of law. La. R.S. 40:1231.8(H). Such expert opinion, however, shall not be conclusive, and either party shall have the right to call, at his cost, any member of the medical review panel as a witness. *Van Buren v. Minor*, *supra*. As with any expert testimony or evidence, the medical review panel opinion is subject to review and contestation by an opposing viewpoint. *Id*. The opinion, therefore, can be used by either the patient or the physician, and the trier of fact is free to accept or reject any

12

portion or all of the opinion. *Id.*, *citing McGlothlin v. Christus St. Patrick Hosp.*, 10-2775 (La. 7/1/11), 65 So. 3d 1218.

The Panel's opinion was admissible in this case pursuant to La. R.S. 40:1231.8(H). Ms. Powell had the opportunity to contest the Panel's opinion and did so through the testimony of Dr. Bonta. It was within the trial court's discretion to accept the Panel's opinion, and it did not err in doing so.

Accordingly, this assignment of error lacks merit.

*Damages*

In her fourth assignment of error, Ms. Powell argues that because she proved that Dr. Merriman breached the standard of care in his treatment of her and that breach caused damages, this court on appeal should award damages. She contends that the record details her lost wages and/or lost earning potential, medical costs, and pain and suffering.

Dr. Merriman argues that Ms. Powell did not meet her burden of proving that any damages resulted from a breach of the standard of care.

As this court has determined that the trial court did not err in its determination that Ms. Powell did not meet her burden of proof that Dr. Merriman breached the standard of care, Ms. Powell is not entitled to damages.

Accordingly, this assignment of error lacks merit.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment in favor of Defendant-Appellee George Merriman, M.D. Costs of appeal are assessed to Plaintiff-Appellant Sandra Powell.

**AFFIRMED.**

13