Judgment rendered August 10, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,697-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

LARON HARRIS AND PAMELA                    Plaintiffs-Appellants
HARRIS, INDIVIDUALLY AND
ON BEHALF OF THE ESTATE OF
THE MINOR, JAIDEN HARRIS

versus

HOLLIWAY MEDICAL CLINIC                     Defendants-Appellees
AND UNNAMED RN IN EMPLOY
OF HOLLIWAY MEDICAL
CLINIC

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 519,928

Honorable Craig O. Marcotte, Judge

* * * * *

JACK BAILEY LAW CORPORATION                 Counsel for Appellants
By: Jack M. Bailey, Jr.
    Valerie Ann DeLatte

PETTIETTE, ARMAND, DUNKELMAN,               Counsel for Appellees,
WOODLEY, BYRD & CROMWELL, LLP               Holliway Medical Clinic,
By: Lawrence W. Pettiette, Jr.              APLLC, and Brondwyn
    Rendi B. Wiggins                        Holliway, M.D.

* * * * *

Before MOORE, THOMPSON, and ROBINSON, JJ.

**THOMPSON, J.**

A five-month-old infant with a rare, undiagnosed autoimmune condition suffered an acute, rapid onset of symptoms while in the pediatrician's office. He was transported by ambulance to the emergency room and was then admitted to the Pediatric Intensive Care Unit, where hours later he tragically died from autoimmune hemolytic anemia. A medical malpractice action was brought against the pediatrician and her medical clinic and staff, asserting in part that the hours-long delay for treatment in the pediatrician's office deprived the child of a prompt diagnosis and opportunity for treatment that may have improved the infant's chance for survival. The Medical Review Panel found no breach of the standard of care by the pediatrician. After a jury trial, the jury found in favor of the pediatrician and her clinic and did not award the child's parents any damages. For the following reasons, we affirm the findings of the trial court.

## FACTS AND PROCEDURAL HISTORY

Jaiden Harris was born on August 25, 2006. His pediatrician was Dr. Brondwyn Holliway. His mother and father are appellants in this matter, Laron and Pamela Harris (hereinafter referred to as "appellants"). The appellants' two older children also saw Dr. Holliway as their pediatrician at Holliway Medical Clinic in Shreveport, LA.

At trial on this matter, Ms. Harris testified that on January 10, 2007, she took Jaiden to Dr. Holliway's office for a regular office visit, and a complete blood count ("CBC") test was taken because Jaiden had cold

symptoms and a low fever. On that date, hemoglobin and hematocrit levels were normal for a child of his age. No anemia was indicated.

On January 30, 2007, Ms. Harris took Jaiden to the Schumpert emergency room ("ER") around 5:00 P.M. ER records show that the chief complaint at that time was vomiting. The record does not show that a CBC test was performed at the Schumpert ER during that visit. The discharge instructions from the January 30, 2007 ER visit were to return to the ER if his condition did not improve, or see Dr. Holliway the next day to recheck.

On January 31, 2007, Ms. Harris testified that she called Holliway Medical Clinic to follow up with Dr. Holliway after Jaiden's ER visit. At around 8:00 P.M. that evening, someone from the clinic spoke to Ms. Harris on the phone. Olivia Musgrove, the Holliway Clinic office manager, testified that the clinic's receptionist completed a telephone consultation form when she took the call from Ms. Harris. The form is dated January 31, 2007, and provides the complaint or concern as: "mother took baby to the ER yesterday, because child was running a fever." Under problems or symptoms, the form provides: "[Mother] is concerned. He's just lying around." The form also notes "eyelids are swelling," "not eating," and "99.4 at 7:40 P.M." Then, Musgrove got on the call with Ms. Harris after she spoke with the receptionist, and added her handwritten notes on the form: "100.6" temperature; "very sleepy"; "instructed to ER go (*sic*)." Ms. Harris testified that she did not go to the ER on January 31, 2007, because Jaiden's condition was showing improvement.

On February 1, 2007, Ms. Harris dropped her older two children with their great-grandmother in the morning, and then drove Mr. Harris to work;

the couple shared one vehicle. After dropping off her husband at work, Ms. Harris arrived at Holliway Medical Clinic on Hearne Avenue with Jaiden around 2:15 P.M. as a walk-in. The clinic was extremely busy, and the waiting room area was standing-room only. After a short time in the waiting room, they were taken to an assessment room. Jaiden was weighed and vital signs were taken. The record does not contain any documentation of vital signs, including Jaiden's oxygen level, from the assessments by clinic staff. In the assessment room, Jaiden received a breathing treatment from clinic staff. Ms. Harris and Jaiden were then moved from the assessment room to an exam room. In the exam room, Jaiden received a second breathing treatment administered by clinic staff later that afternoon.

Sometime between 7:00 P.M. and 8:00 P.M., Ms. Harris testified that Dr. Holliway entered Jaiden's exam room. Dr. Holliway testified that she observed Jaiden in respiratory distress. Dr. Holliway testified that he appeared pale and was grunting and wheezing. Dr. Holliway quickly called 911 upon observing Jaiden's condition. Jaiden was transported by EMS from Holliway Medical Clinic to the Schumpert ER. The report from the EMS transport ("EMS report") notes Jaiden's on-scene condition as "Difficulty breathing" and states "Level of Distress: Severe." The EMS report notes that Jaiden was receiving a breathing treatment at Holliway Medical Clinic, and the same treatment was continued en route to the hospital. At 8:00 P.M., the EMS report notes that lung sounds were assessed; the left lung was clear, and the right lung noted "wheeze." Oxygen was also administered. At 8:05 P.M., the pulse oximetry percentage

3

saturation was 96%, and by 8:11 P.M. had improved to 100%. The EMS report indicates that Jaiden arrived at the Schumpert ER at 8:16 P.M.

An ER report prepared by Dr. Deborah Fletcher ("ER report") notes Jaiden's chief complaint as "respiratory distress." The ER report notes that Dr. Rosenberg, the Schumpert pediatric intensive care unit ("PICU") physician, advised EMS to stop in the emergency department for evaluation. The ER report provides information regarding Jaiden's prior visit to the ER on January 30, 2007, for vomiting. A serum chemistry and urinalysis test from the January 30, 2007 ER visit were both normal. The ER report notes that during his January 30, 2007 ER visit, no cause for his vomiting was determined, but "thought it might be an early viral illness." The ER report notes that Ms. Harris reported that Jaiden continued to experience some vomiting after his January 30, 2007 ER visit.

The ER report notes regarding Jaiden's arrival: "[u]pon arrival here, the patient is in marked distress. He appears pale and lethargic." The physical examination portion of the ER report provides a normal temperature of 98.5 degrees, with an elevated heart rate and respiratory rate. The ER report notes his oxygen saturation: "sat is 100%, but he is on oxygen." The ER report notes that Dr. Rosenberg in the PICU was notified that Jaiden was "very ill and would need to go to the intensive care unit." Importantly, the ER report contains the first indication that Jaiden was anemic. Testing done in the ER upon Jaiden's arrival confirmed an extremely low hematocrit level. The ER report concludes that Jaiden is "markedly anemic, though the etiology of this is not clear at this time." The ER report also categorized Jaiden as being "in critical condition."

4

After approximately 35 minutes of treatment in the ER, Jaiden was transferred from the ER to PICU. A "Death Note/Discharge Summary" contained in the PICU medical records ("PICU record") prepared by Dr. Rosenberg notes that Jaiden's hemoglobin level was determined to be 2.6. A normal hemoglobin level for a child Jaiden's age ranges from 9.5-14.1. The PICU record notes that contact was made with the "pediatric hematology" service notifying them of Jaiden's anemia, and reporting specific test results in an attempt to obtain blood from the local blood bank for a transfusion. The PICU record provides: "The blood was not immediately obtained secondary to multiple antibodies detected in the laboratory and blood was ordered from an outside blood bank." The PICU record notes that Jaiden was stable at that time.

At approximately 2:50 A.M. on February 2, 2007, approximately 12 hours after first appearing at Holliway Medical Clinic and 7 hours after arriving at the ER, the PICU record notes that a code alarm went off on Jaiden in the PICU. His condition had rapidly deteriorated since he was last checked around 2:00 A.M. Following the code, a report from the emergency department provides:

> Blood bank was contacted about expediting cross-matched blood for the patient. Apparently, the patient did have some antibodies in the cross-match and it was not expected that he would be getting blood until tomorrow morning. At this point he has received no blood. However, they were told to either send up the cross-match blood that they had available or O-blood emergently.

The PICU record provides that blood transfusion with "not fully matched blood were given rapidly." However, Jaiden was in cardiac arrest and

5

despite therapeutic efforts, he was not improving. Following extensive resuscitative efforts, Jaiden was tragically pronounced dead at 5:56 A.M.

Jaiden's cause of death listed on his autopsy report was autoimmune hemolytic anemia. The autopsy report provides:

> The blood bank identified an antibody directed against Jaiden's red blood cells. This antibody caused acute hemolysis of the red cells. A microcytic anemia is typical of acute hemolytic episodes. […] Antibodies of this nature can occur without warning and for multiple reasons, however they are frequently triggered by a viral illness and Jaiden had a history of a recent illness a few days preceeding (*sic*) this episode.

On March 19, 2008, appellants filed a petition for medical malpractice, personal injuries, survival action, and wrongful death. On April 16, 2012, a Medical Review Panel ("Panel") convened. The Panel, in its opinion, found no malpractice by the Holliway Medical Clinic or Dr. Holliway. The Panel opinion provided that appellees' "actions were well within the standard of care and there was no deviation from the standard of care rendered by any of the defendants." The Panel also found "no causation to the asserted resultant damages."

On September 14, 2012, appellants filed a motion to strike the Medical Review Panel opinion. The trial court denied the motion on April 19, 2013. In its judgment denying the motion, the trial court noted that there was no statutory or jurisprudential authority for the motion to strike the Medical Review Panel opinion. This Court denied a writ application on August 2, 2013.

There was an extensive period between the 2007 death of Jaiden, the 2012 Medical Review Panel, and the June 2021 trial of this matter. On June 18, 2021, a few days before trial was set to begin, appellees filed a motion to

6

exclude a report prepared by Ramona Guin, R.N. Appellees contended that Guin prepared her report without reviewing any clinic protocols, standing orders, or the deposition testimony of Dr. Holliway regarding those protocols and standing orders. Additionally, appellees filed a motion to limit certain portions of the testimony of appellants' expert, Dr. Eric Mullins, as to the standard of care applicable to the staff of Holliway Medical Clinic.

On June 21, 2021, on the eve of trial, appellants filed a second motion in limine to strike the Panel opinion, claiming that it was biased and prejudicial. The trial judge denied the second motion in limine. The Panel opinion was ultimately admitted into evidence without objection.

On June 22, 2021, the trial judge granted, in part, appellees' motion to limit the testimony of Dr. Eric Mullins, excluding certain portions of his deposition testimony from evidence. On June 23, 2021, the trial judge granted appellees' motion to exclude Guin's report. The trial judge concluded that because Guin did not review the applicable policies and procedures of the Holliway Medical Clinic in effect in 2007, she did not have the requisite basis for the expert opinion contained in her report.

A jury trial was held on June 22, 2021, and concluded on June 25, 2021. The jury found in favor of the appellees, concluding that appellants did not establish the standard of care ordinarily exercised by a pediatrician in the year 2007. The jury further found that appellants did establish the standard of care ordinarily exercised by the staff of a pediatrician in Shreveport, Louisiana in 2007, and they found that the Holliway Medical Clinic staff did breach the standard of care in their treatment of Jaiden Harris. However, the jury found that appellants did not establish that the

7

breach of the standard of care by the clinic staff was a substantial factor in causing the death of Jaiden Harris. The jury found that Jaiden Harris did not have a chance of survival or better outcome that was impeded by Holliway Medical Clinic staff. The jury found that Jaiden did not lose a chance of survival or better outcome due to the substandard treatment by the Holliway Medical Clinic or Dr. Holliway. The jury did not award any damages to appellants. This appeal followed.

## DISCUSSION

Appellants raise eight assignments of error which challenge the jury's findings of fact as well as challenging certain evidentiary rulings of the trial judge. First, we will consider the controlling medical malpractice law.

Regarding medical malpractice actions based on the negligence of a physician, La. R.S. 9:2794(A) provides that the plaintiff has the burden of proving:

(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians […] licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians […] within the involved medical specialty.

(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

8

The plaintiff has the burden of proving, by a preponderance of the evidence, (1) that the doctor's treatment fell below the standard of care expected of a physician in his medical specialty; and (2) the existence of a causal relationship between the alleged negligent treatment and the injury sustained. *Fusilier v. Dauterive*, 00-0151 (La. 7/14/00), 764 So. 2d 74, *citing Gordon v. Louisiana State Univ. Bd. of Sup'rs*, 27,966 (La. App. 2 Cir. 3/1/96), 669 So. 2d 736, *writ denied*, 96-1038 (La. 5/31/96), 674 So. 2d 263. A physician is required to exercise that degree of skill ordinarily employed under similar circumstances by others in the profession and also to use reasonable care, diligence, and judgment. *Hastings v. Baton Rouge Gen. Hosp.*, 498 So. 2d 713 (La. 1986). A physician is not required to exercise the highest degree of care possible; rather, his duty is to exercise the degree of skill ordinarily employed by his professional peers under similar circumstances. *Gordon v. Louisiana State Univ. Bd. of Sup'rs*, *supra*. The law does not require absolute precision from a physician. *Id.* The mere fact that an injury occurred does not raise a presumption that the physician was negligent. *Hays v. Christus Schumpert N. Louisiana*, 46,408 (La. App. 2 Cir. 9/21/11), 72 So. 3d 955.

Appellate review of a trial court's findings in a medical malpractice action is limited. *Van Buren v. Minor*, 51,960 (La. App. 2 Cir. 4/11/18), 247 So. 3d 1040, *writ denied*, 18-0768 (La. 9/21/18), 252 So. 3d 911. The manifest error standard applies to the review of medical malpractice cases, and a court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Moore v. Smith*,

48,954 (La. App. 2 Cir. 5/21/14), 141 So. 3d 323, *citing Crockham v. Thompson*, 47,505 (La. App. 2 Cir. 11/14/12), 107 So. 3d 719.

Expert witnesses who are members of the medical profession are needed to establish the applicable standard of care, whether the standard of care was breached by the defendant doctor's conduct and whether that breach resulted in injury to the plaintiff. *Richardson v. Cotter*, 51,637 (La. App. 2 Cir. 9/27/17), 245 So. 3d 136; *Jones v. Hernandez*, 38,818 (La. App. 2 Cir. 8/18/04), 880 So. 2d 245, *writ denied*, 04-2319 (La. 11/19/04), 888 So. 2d 203. Where there are conflicting expert opinions concerning the defendant's compliance with the standard of care, the reviewing court will give great deference to the conclusions of the trier of fact. *Van Buren v. Minor*, *supra*. The effect and weight to be given to expert testimony is within the broad discretion of the trial court. *Jones v. Hernandez*, *supra*.

### Findings of Fact

Appellants assert three assignments of error regarding the jury's findings of fact, namely:

- **The trial court's jury instructions and response to the jury's question during deliberation was legal error and reversible error.**

- **It was reversible error and manifest error for the jury to find that the staff of the Holliway Medical Clinic acted below the standard of care, but conclude that this malpractice did not result in a loss of opportunity to survive or a loss of chance for a better outcome.**

- **It was reversible error and legal error for the jury to conclude there was no evidence of malpractice on the part of Dr. Brondwyn Holliway, while finding her Clinic did commit malpractice, particularly, given her legal responsibility for the Clinic staff.**

Appellants contend that the jury verdict form showed that they met their burden of proof regarding the clinic's staff breach of the applicable

10

standard of care.  However, appellants contend that it was error for the jury to conclude that this breach of the standard of care did not cause Jaiden's death or result in a loss chance of survival or loss of opportunity for a better outcome.  Appellants also contend that it was manifestly erroneous for the jury to find that the clinic staff breached the standard of care, but that Dr. Holliway did not.

The three Panel physicians – Dr. Sharye Atchison, Dr. Clifton Vaughn, and Dr. Lynne Holladay – are pediatricians who practice in pediatric clinics in Shreveport, Louisiana.  Each Panel physician considered the standard of care applicable to pediatricians in Shreveport, Louisiana in reaching their opinion, based on their own experience in the profession.  The Panel physicians unanimously concluded that Dr. Holliway's conduct did not fall below the standard of care in her treatment of Jaiden.

Further, Dr. Holladay and Dr. Vaughn both testified as expert witnesses in person at trial.  Both doctors testified that in a pediatric clinic like the Holliway Medical Clinic, Dr. Holliway's conduct in treating Jaiden was appropriate and met the standard of care.

Dr. Sharye Atchison's video deposition was entered into evidence at trial.  Dr. Atchison testified that after extensive review of Jaiden's medical records, she believed that Jaiden's condition rapidly deteriorated.  She testified, regarding Jaiden's PICU records: "So that, to me, tells me a lot about how rapid these things – the hemolysis […] how rapidly he was getting sick and the changes were happening in his blood […]."  Dr. Atchison opined that Jaiden did not appear to be in severe distress upon his arrival at Holliway Medical Clinic.  She testified that the clinic staff's

11

administration of breathing treatments was appropriate, and was a common procedure to address a patient experiencing respiratory distress and wheezing.

None of the Panel physicians testified that he or she had previously seen a five-month-old patient diagnosed with autoimmune hemolytic anemia, the condition that caused Jaiden's death. Dr. Vaughn testified: "It's about one in a million in children his age."

Dr. Eric Mullins, a pediatric hematologist, testified via video deposition as an expert witness for the appellants. Dr. Mullins testified that autoimmune hemolytic anemia can be a "very acute and quickly progressing process." Dr. Mullins, like the Panel physicians, had not seen that type of anemia in a patient Jaiden's age. Dr. Mullins testified that in cases of severe anemia, a physician works to find blood for a transfusion as quickly as possible. Dr. Mullins testified that by the time Jaiden received his diagnosis of anemia, his care team discovered the antibodies causing the anemia in his blood, and the care team began the cross-match process, Jaiden "went into extremis before they were able to release any blood to transfuse him." Dr. Mullins also noted that a "match unit" of blood was never found in the blood bank for Jaiden, "which is often the case in autoimmune hemolytic anemia." Dr. Mullins testified regarding physical exam findings that can assist in identifying anemia. Those findings include a higher heart rate and shortness of breath, as well as "pallor" or skin tone. Dr. Mullins testified that with Jaiden's hemoglobin of 2.6, "you would have significant pallor" which would be recognizable. Dr. Mullins noted that Dr. Holliway noticed those physical signs immediately when she entered Jaiden's exam room. Dr.

Mullins testified that physical findings in this case are inconclusive, stating: "we don't know over that five hours because it really wasn't documented how he evolved."

With regard to the clinic staff's conduct, Dr. Vaughn testified that in his experience, if a patient were experiencing respiratory distress, his staff would administer a breathing treatment and let him know about the patient's difficulty breathing. Dr. Vaughn testified that he would rely on his staff to alert him to a patient in unusual distress. In addition to the testimony of all three Panel physicians, the jury also was able to review the testimony of appellants' expert Dr. Mullins, a pediatric hematologist. The jury made inferences of fact and determined which expert opinions and testimonies were most credible. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. The court of appeal may not reverse if the findings are reasonable in light of the record, reviewed in its entirety, even if this court, sitting as the trier of fact, may have weighed the evidence differently. *Van Buren*, *supra*. Here, the jury's choice between conflicting expert opinions was reasonable; therefore, its finding is not manifestly erroneous or clearly wrong.

Appellants argue that a note the jury sent to the judge during deliberations indicates the jury created a reversible error, because the jury verdict form itself was flawed. The record reveals that a colloquy between the trial judge and all counsel resulted in a response to the jury's question

13

that was agreed upon by all of the parties. During the colloquy, appellants' counsel did not object to the judge's response to the jury's question regarding an award of damages. If a party fails to object to jury charges in the trial court, he is precluded from raising an objection on appeal. *See Luquette v. Allstate Ins. (Indem.) Co.*, 50,177 (La. App. 2 Cir. 8/12/15), 174 So. 3d 736, 742-43, *writ denied*, 2015-1641 (La. 10/30/15), 180 So. 3d 300. Additionally, the record does not show that appellants entered any objection to the crafting and finalization of jury instructions or the questionnaire contained in the jury verdict form at any point during the trial. In fact, the record shows that appellants fully participated with counsel for appellees and the trial judge in crafting jury instructions and the jury verdict form.

The evidence in this case justifies the jury's determination that appellants failed to carry the burden of proof under La. R.S. 9:2794(A) as to the applicable standard of care for a pediatrician. Further, it was not manifestly erroneous for the jury to conclude that while the clinic staff breached the standard of care, that breach did not cause the resulting harm to Jaiden. As noted above, the existence of a causal relationship between the alleged negligent treatment and the injury sustained is required in order to establish medical malpractice. *Fusilier, supra.* A breach of the standard of care alone is not sufficient to establish malpractice. The jury was presented with a questionnaire which afforded it an opportunity to award damages in the event it found the clinic's breach of the standard of care caused Jaiden's harm. The jury's decision not to award damages was not legal error.

Accordingly, these assignments of error lack merit.

14

## Evidentiary Rulings

Appellants assert two assignments of error related to the trial court's evidentiary rulings. Appellants argue that portions of their expert's testimony were erroneously excluded, and that the trial court excluded the entire report prepared by a proposed expert witness. Specifically:

- **It was reversible error and legal error for the trial court to exclude relevant and significant portions of the testimony of Dr. Eric Mullins, since his testimony was material to the issue of causation of Jaiden Harris' death, and the loss of opportunity for survival or for a better outcome, and not just the standard of care.**

- **It was reversible and legal error for the trial court to exclude the testimony of appellants' expert witness, Ramona Guin, R.N.**

The trial court is granted broad discretion in its evidentiary rulings, which will not be disturbed on appeal absent a clear abuse of discretion. *Fields v. Walpole Tire Serv., LLC*, 45,206 (La. App. 2 Cir. 5/19/10), 37 So. 3d 549, *writ denied*, 10-1430 (La. 10/1/10), 45 So. 3d 1097. At trial, a party must make a timely objection to evidence that party considers to be inadmissible and must state the specific ground for the objection. La. C.E. art. 103(A)(1); La. C.C.P. art. 1635. On appeal, this court must consider whether the complained of ruling was erroneous and whether the error affected a substantial right of the party. *Fields, supra*. The determination is whether the error, when compared to the record in its entirety, has a substantial effect on the outcome of the case, and it is the complainant's burden to so prove. If there is no substantial effect on the outcome, then a reversal is not warranted. *Fields, supra; Crisler v. Paige One, Inc.*, 42,563 (La. App. 2 Cir. 1/9/08), 974 So. 2d 125.

Appellants contend that the trial court erroneously excluded portions of the deposition of Dr. Mullins. The record reveals that the trial court

minimally redacted the testimony of Dr. Mullins, following review of the deposition by all counsel and an agreement as to what portions would be redacted in the version that would be introduced into evidence at trial. On the record, the trial judge expressed his understanding that an agreement had been reached on the portions of Dr. Mullins' testimony to be redacted. As a result of this agreement, a minimally redacted version of Dr. Mullins' deposition was introduced into evidence. The record reveals that when given the opportunity by the trial judge, appellants' counsel did not object or otherwise state that he disagreed with the redacted portions of Dr. Mullins' testimony that would be presented to the jury. At trial, a party must make a timely objection to evidence that party considers to be inadmissible and must state the specific ground for the objection. La. C.E. art. 103(A)(1); La. C.C.P. art. 1635. As there was no timely objection, this assignment of error is without merit.

Appellants also contend that the trial court erroneously excluded a report prepared by Regina Guin, a nurse retained by appellants to provide an expert report on the applicable standard of care for the clinic staff. Appellees argued in their motion to exclude the report that Guin did not review any protocols of the clinic that were in effect in 2007, nor did she review the deposition of Dr. Holliway, who testified about her clinic's policies and her standing orders in 2007. Appellees contend that the report itself notes that without reviewing the applicable protocols or standing orders of the Holliway Medical Clinic, Guin could not complete a review of the issues related to the applicable standard of care. Appellees argue that her expert opinion concerning the standard of care is not based on sufficient

facts or data, and therefore could not aid the trier of fact. We find that the trial judge did not err in excluding Guin's report. The testimony of Olivia Musgroves, the Holliway Clinic Office manager, as well as the testimony of Dr. Holliway, directly address the issues relating to staff policies and procedures in place at the time of Jaiden's death. Considering the record in its entirety, the exclusion of a report that did not consider the applicable policies in effect at the time of Jaiden's death did not have a substantial effect on the outcome of the case. This assignment of error is without merit.

### Medical Review Panel Opinion

Appellants assert two assignments of error related to the trial court's admission of the Medical Review Panel's opinion. Appellants also argue that the previously discussed evidentiary rulings were compounded by the trial judge's admission of the Medical Review Panel opinion.

- **It was reversible error and legal error to allow the Medical Review Panel's Opinion into evidence, when the panel exceeded its authority granted in La. R.S. 40:1299.47.**

- **The prejudice and legal error of the trial court's evidentiary rulings was compounded by the admission of the panel opinion and panel members' testimony, while excluding the testimony of the appellants' expert witness opinions.**

Any report of the expert opinion reached by the medical review panel shall be admissible as evidence in any action subsequently brought by the claimant in a court of law. La. R.S. 40:1231.8(H). Such expert opinion, however, shall not be conclusive, and either party shall have the right to call, at his cost, any member of the medical review panel as a witness. *Van Buren v. Minor*, *supra*. As with any expert testimony or evidence, the medical review panel opinion is subject to review and contestation by an opposing viewpoint. *Id*. The opinion, therefore, can be used by either the

17

patient or the physician, and the trier of fact is free to accept or reject any portion or all of the opinion. *Id.*, *citing McGlothlin v. Christus St. Patrick Hosp.*, 10-2775 (La. 7/1/11), 65 So. 3d 1218.

The Panel's opinion was admissible in this case pursuant to La. R.S. 40:1231.8(H). A prior motion to strike the Medical Review Panel opinion, filed in 2012, was denied, and this court denied writs on the issue in 2013. Appellants' second motion to strike the Medical Review Panel opinion, filed on the eve of trial, was also denied by the trial judge. It was within the trial court's discretion to accept the Panel's opinion, and it did not err in doing so. Therefore, these assignments of error are without merit.

## Certificate of Coverage by the Patient Compensation Fund

Appellants assert as an assignment of error the inclusion of a Certificate of Coverage by the Patient Compensation Fund for Holliway Medical Clinic.

- **It was reversible error and legal error for the trial court to allow expansion of the pleadings by admitting Holloway Medical Clinic's Certificate of Coverage by the Patient Compensation Fund.**

The record contains evidence that Holliway Medical Clinic was a qualified healthcare provider for acts of medical malpractice, pursuant to La. R.S. 40:1299.41, *et seq.* Specifically, a letter dated October 24, 2011, from the Patient's Compensation Fund to appellants' counsel, confirms that Holliway Medical Clinic was reported as a qualified provider for the Harris' malpractice claim. Further, the record is devoid of any objection by the appellants to the admission of evidence of the clinic's qualified status. At trial, a party must make a timely objection to evidence that party considers to be inadmissible and must state the specific ground for the objection. La.

18

C.E. art. 103(A)(1); La. C.C.P. art. 1635.  Accordingly, this assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment in favor of Defendants-Appellees, Dr. Brondwyn Holliway and the Holliway Medical Clinic.  Costs of appeal are assessed to Plaintiffs-Appellants, Laron Harris and Pamela Harris, Individually and on behalf of the Estate of the Minor Jaiden Harris.

**AFFIRMED.**