Judgment rendered April 22, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,796-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ALICE CLARK                                      Plaintiff-Appellant

versus

ST. FRANCIS MEDICAL                              Defendant-Appellee
CENTER, INC.

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2019-2615

Honorable Frederick Douglass Jones, Judge

* * * * *

LAW OFFICE OF                                    Counsel for
ANTHONY J. BRUSCATO                              Appellant
By: Anthony J. Bruscato

EDDIE M. CLARK &
ASSOCIATES, LLC
By: Eddie M. Clark

NELSON, ZENTNER,                                 Counsel for
SARTOR & SNELLINGS, LLC                          Appellee
By: David Hyland Nelson
    Douglas R. Nielsen

* * * * *

Before PITMAN, COX, and HUNTER, JJ.

**HUNTER, J.**

Plaintiff, Alice Clark, appeals from a jury verdict finding that plaintiff failed to prove, by a preponderance of the evidence, the treatment rendered to her by defendant, St. Francis Medical Center, Inc., fell below the standard of care ordinarily practiced by hospitals under similar circumstances. The trial court rendered judgment in accordance with the jury's verdict and denied plaintiff's motions for judgment notwithstanding the verdict and new trial. For the following reasons, we affirm.

### FACTS

On October 12, 2016, plaintiff, Alice Clark, underwent an outpatient surgical procedure at St. Francis Medical Center ("SFMC") in Monroe, Louisiana. Between 8:07 a.m. and 9:34 a.m., plaintiff was administered Propofol (an anesthesia agent), fentanyl, and Dilaudid (for pain management). At 10:07 a.m., plaintiff was transferred from the Post-Anesthesia Care Unit ("PACU") to the Ambulatory Surgery Unit ("ASU") to await discharge. Soon after arriving in the ASU, plaintiff requested to use the restroom. Teresa Massey, a registered nurse, assisted plaintiff to the restroom by holding her arm. Nurse Massey, who noted plaintiff was alert and oriented, left plaintiff on the toilet with instructions to remain seated and to use the "white cord" to alert the staff if she required assistance. Nurse Massey then went to the desk to call plaintiff's family member. After using the restroom, plaintiff attempted to pull up her underwear. She stated that she became "sleepy and dizzy," fell off the commode, and fractured her left hip.[1]

---

[1] The following day, plaintiff underwent a surgical procedure to repair her fractured hip. She remained hospitalized until October 28, 2016.

On March 16, 2017, plaintiff filed a request for the formation of a Medical Review Panel ("MRP"), and a panel was formed and convened. After reviewing the evidence submitted by plaintiff and SFMC, a unanimous MRP determined that the evidence did not support the conclusion that SFMC or its employees failed to meet the applicable standard of care. In its opinion, the MRP stated as follows:

***

This Panel finds that all care and treatment rendered to Ms. Clark by the nurses and staff of St. Francis Medical Center was within the standard of care. Propofol is a relatively short acting anesthesia. When Ms. Clark had been discharged from PACU to the ambulatory surgery unit in preparation for her discharge, she was alert as evidenced by her deposition testimony recalling the details of the subject incident. It is within the standard of care for Nurse Massey to have left Ms. Clark unattended once she was seated on the toilet in the restroom to go call a family member. Nurse Massey gave Ms. Clark appropriate instructions not to get up from the toilet until Nurse Massey returned and if assistance was needed before then to pull the call cord. While it is unfortunate that Ms. Clark fell and sustained her injury, the nurses of St. Francis Medical Center acted at all times appropriately and within [the] standard of care.

***

The MRP opinion did not address the effects of fentanyl and Dilaudid.

On August 19, 2019, plaintiff filed a medical malpractice lawsuit against SFMC, alleging SFMC and its employees were negligent for the following acts/omissions: (1) failure to have the originally assigned nurse, who was familiar with plaintiff's preexisting condition, to care for her when she returned to the ASU; (2) leaving plaintiff alone, seated on a toilet, after she underwent surgery; (3) failure to have a policy and/or procedure in place regarding caring for patients after outpatient surgery; (4) failure to apply and maintain the standard fall risk precautions; (5) leaving a patient in the bathroom for "an inordinate amount of time" without periodic monitoring;

2

and (6) failure to periodically and timely monitor a patient "in a weakened or impaired physical and mental condition."

A jury trial was held October 28-31, 2024. During the trial, plaintiff testified that the nurse assisted her to the restroom and told her she would "be right back" and instructed her to "push the red button" if she needed assistance. She stated as follows:

> I was sitting there and using the bathroom. I was sitting there, and it seemed like she was a long time coming back, a long time coming back. *** So, I – I got through and, like I – like I was sitting there a long time, so I just kind of raised up trying to get my clothes back up on me. And when I raised up *** to pull my clothes up on me *** I just fell out on the floor[.]
> ***

Plaintiff stated that while waiting for the nurse to return, she began to feel "kind of sleepy and kind of woozy like." She later clarified that she felt "sleepy and dizzy" while sitting on the toilet. During cross-examination, plaintiff testified that she did not pull the cord as the nurse had instructed because she "didn't think about that cord."

Dr. Stella Fitzgibbons, an expert retained by plaintiff, agreed with the MRP that Propofol did not play a role in plaintiff's injury. However, Dr. Fitzgibbons noted the MRP overlooked the fact that plaintiff had also received fentanyl and Dilaudid, and the side effects of those drugs include disorientation, drowsiness, dizziness, and balance issues. Dr. Fitzgibbons testified as follows:

> ***
> She also, in the operating room, was given Fentanyl, 25 micrograms, four different times. Given at 8:25, 8:45, 8:50, and at 9:07. Fentanyl generally lasts up to an hour, but it has a half-life of [two] to [four] hours. Ms. Clark, being [70] years old, would probably be towards the long end of that, and I think she probably was still feeling the effects more than an hour after she had it. That was a very stiff dose for a 70-year-old lady, regardless of her state of health, and she was probably still very

3

sleepy when she got to the post-operative area. She also, at 9:34, was given an IV push dose of Dilaudid, half a milligram, and Diluadid lasts for three or four hours. *** Fentanyl and Diluadid are both narcotic pain medicines *** [and] like any other narcotic pain reliever, it causes sleepiness, sedation, and can easily cause mental confusion. *** I think she would have been drowsy, and I doubt very much that her balance was something reliable.

***

I don't think she was even alert enough to grab the grabrail, if there was one. She probably just sat down. Usually when you void your bladder, your blood pressure drops, and that would have made the confusion a little bit worse. I think that a heavily sedated patient like this really did not need to be trained to manage her balance all by herself or follow instructions to stay sitting down.

***

Dr. Fitzgibbons opined that plaintiff was not in "any kind of condition to be left alone."

During cross-examination, Dr. Fitzgibbons acknowledged that plaintiff's medical records indicated she was "alert and oriented." She also acknowledged that Nurse Massey documented that she had assisted plaintiff to the restroom and instructed her "not to get up" and to "pull the white cord" for assistance. Dr. Fitzgibbons further agreed that she did not see anything in plaintiff's medical records to substantiate her conclusion that plaintiff was "confused" or "dizzy," stating, "I didn't read completely through the nurse's notes, but I did not find anything like that." She also admitted that the medical records indicated that plaintiff denied experiencing dizziness when she was examined by the physician after her fall.

Stephanie Chance, who, at the time of plaintiff's fall, was the nurse manager of the ASU, also testified. Nurse Chance testified that ordinarily, patients are not allowed to walk unassisted post-surgery because "they sometimes can be still a little under the influence or be unsteady[.]" She also testified that "each patient is different," and the registered nurse reaches

4

the determination of whether a patient can be left alone "based on the assessment of the patient."

Nurse Jesse Albritton testified that he was working in ASU on the date of plaintiff's injury, and after plaintiff fell, he and another employee assisted her back into the bed. Nurse Allbritton testified that plaintiff "was very awake, talking to me" and answering questions appropriately. He also testified that patients in ASU are assisted to the restroom by a nurse, and once a patient is in the restroom, the nurse, based on his or her assessment of the patient, may determine whether the patient is able to remain in the restroom without assistance. Nurse Allbritton further testified that in his opinion, Nurse Massey did not breach the standard of care by leaving plaintiff in the restroom alone.

Nurse Albritton admitted that during his deposition, he did not render an opinion of whether it was appropriate to leave plaintiff in the restroom by herself. During the deposition, he stated, "I can't make that decision without being able to see the patient and make an assessment of the patient's mental status and capability at that time."

Dr. Russell T. Lolley, who served as a member of the MRP, was accepted by the court as an expert in the field of general surgery. Dr. Lolley acknowledged that the MRP opinion mentioned Propofol but did not mention fentanyl or Dilaudid. He testified that the MRP reviewed plaintiff's entire medical record and was aware that plaintiff had received fentanyl and Dilaudid prior to her fall. According to Dr. Lolley, the fact that fentanyl and Dilaudid were not mentioned in the opinion "was just an oversight." He testified that the medical records stated plaintiff was "fully awake" when she

5

was transferred from the PACU to the ASU, which means she was "aware of her surroundings and able to communicate."

Dr. Lolley also testified that if plaintiff had still been under the influence of fentanyl and Dilaudid in the ASU, she "would be dizzy and somewhat incoherent." Dr. Lolley stated a nurse should not leave a "confused or dazed" patient alone in the restroom. However, once the patient is assessed and the nurse determines whether he or she understands the instructions provided, then it is appropriate to leave them under the circumstances presented in this case. Dr. Lolley further disagreed with the opinion expressed by Dr. Fitzgibbons. He stated, "I don't think Dr. Fitzgibbons differentiated between the duration of action and the half-life of a drug. He explained that the duration in action of Propofol, fentanyl, and Dilaudid "is less than an hour."

During his testimony under cross-examination, Dr. Lolley reiterated that the MRP discussed included fentanyl and Dilaudid in its discussions and concluded that the drugs did not cause plaintiff's fall. Again, Dr. Lolley testified, "I think the duration of action of all of these drugs was so short that – that it did not affect this patient's outcome." He further testified that plaintiff did not appear to be exhibiting any symptoms of being affected by fentanyl and Diluadid because the medical records stated she was not experiencing dizziness or slurred speech.

Nurse Massey also testified at trial and was accepted by the court as an expert in the field of nursing. She stated that plaintiff was fully awake, alert, and oriented when she arrived in the ASU. She also testified that plaintiff indicated that she needed to use the restroom, and she (Nurse Massey) disconnected plaintiff's intravenous line, lowered the side rail of

the bed, sat her up and allowed her to "dangle her feet," made sure she was "feeling okay," and assisted her to the restroom. Nurse Massey stated that before she left plaintiff in the restroom, she instructed her not to get up and to pull the call light for assistance. She also stated that plaintiff acknowledged that she understood the instructions, and she did not have any concerns about plaintiff's mental acuity. Additionally, Nurse Massey testified plaintiff did not complain of dizziness before or after she fell.

Dr. Jonathan Hunter, who also served as a member of the MRP, was accepted by the court as an expert in the field of family medicine. He testified that he and the other members of the MRP received and reviewed a complete copy of plaintiff's medical records from SFMC, the depositions of the nurses, and affidavits executed by plaintiff and her granddaughter. Dr. Hunter stated that after reviewing the medical records and documents presented, the MRP concluded that SFMC did not breach the standard of care. Like Dr. Lolley, Dr. Hunter acknowledged that the medical records indicated that plaintiff had received fentanyl and Dilaudid in the PACU; however, they were not mentioned in the MRP's opinion. Dr. Hunter testified that he did not agree with the opinion expressed by Dr. Fitzgibbons because fentanyl and Dilaudid are quickly cleared, and the medical records stated that plaintiff was not exhibiting any symptoms of being impaired.

During his testimony on cross-examination, Dr. Hunter explained that plaintiff was alert, and the small doses of fentanyl and Diluadid administered to her did not seem to be affecting her. He also acknowledged that Dilaudid is a "potent opioid," and one of the risks of opioids is respiratory depression. He also testified that when administered together, Dilaudid and Propofol can cause sedation and can lead to "deep and prolonged unconsciousness." Dr.

7

Hunter also admitted that Dilaudid, fentanyl, and Propofol may affect brain function and may lead to confusion and disorientation. On redirect examination, Dr. Hunter testified plaintiff's medical records did not indicate that she was experiencing respiratory depression, confusion, disorientation, dizziness or drowsiness before or after her fall.

After reviewing the evidence presented, the jury found that plaintiff did not prove, by a preponderance of the evidence, that the treatment rendered to her by SFMC fell below the standard of care ordinarily practiced by hospitals under similar circumstances. The trial court rendered a judgment in accordance with the jury's verdict and dismissed all claims against SFMC with prejudice. Subsequently, the trial court denied plaintiff's motion for judgment notwithstanding the verdict ("JNOV") or new trial.

Plaintiff appeals.

## DISCUSSION

Plaintiff contends the trial court abused its discretion by allowing Dr. Lolley and Dr. Hunter, who served as members of the MRP, to testify as experts for SFMC. Plaintiff argues that the witnesses should not have been allowed to testify because SFMC failed to disclose their identities and opinions during discovery, and their testimony was cumulative. Plaintiff further maintains that the trial court erroneously allowed Dr. Lolley and Dr. Hunter to testify as to the effects of Dilaudid and fentanyl, when the MRP opinion only mentioned Propofol.

Plaintiff also contends the trial court erred by allowing Dr. Hunter to testify outside the scope of his area of expertise. Plaintiff argues that Dr. Hunter was accepted by the court as an expert in family medicine, and he

8

does not routinely practice in hospital settings. He also admitted that he was not familiar with the obligations of a hospital nurse. Plaintiff argues that had Dr. Hunter been identified as a witness during the discovery phase of the litigation, she would have had an opportunity to raise a challenge to his testimony pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

La. C.E. art. 702(A) provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(2) The testimony is based on sufficient facts or data;
(3) The testimony is the product of reliable principles and methods; and
(4) The expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

La. C.E. art. 703 provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. La. C.E. art. 704. In a civil case, the expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination. La. C.E. art. 705(A).

La. C.C.P. art. 1425 provides:

A. A party may through interrogatories or by deposition require any other party to identify each person who may be used at trial to present evidence under Articles 702 through 705 of the Louisiana Code of Evidence.

B. ***Upon contradictory motion of any party or on the court's own motion***, an order may be entered requiring that each party that has retained or specially employed a person to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony provide a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor and the data or other information considered by the witness in forming the opinions. *The parties, **upon agreement, or if ordered by the court**, shall include in the report any or all of the following: exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.* [Emphasis supplied.]

The purpose of the expert report required in La. C.C.P. art. 1425(B) is to provide the opposing party with advance notice of the expert's opinion, the basis and reasons for it, and the data and other information considered by the witness in forming the opinions. *Van Buren v. Minor*, 51,960 (La. App. 2 Cir. 4/11/18), 247 So. 3d 1040, *writ denied*, 2018-0768 (La. 9/21/18), 252 So. 3d 911; *Moonan v. La. Med. Mut. Ins. Co.*, 16-113 (La. App. 5 Cir. 9/22/16), 202 So. 3d 529, *writ denied*, 16-2048 (La. 1/9/17), 214 So. 3d 869. The jurisprudence has interpreted La. C.C.P. art. 1425(B) to protect a party from prejudicial surprise at trial by the introduction of evidence not previously known to exist, and against which he could not have prepared a rebuttal. *See Maddox v. Bailey*, 13-0564 (La. App. 1 Cir. 5/19/14), 146 So.

3d 590. *See also Ditcharo v. State*, 17-0221 (La. App. 4 Cir. 10/18/17), 316 So.3d 926.

Further, La. C.C.P. art. 1428(1) imposes a continuing affirmative duty on a party to timely supplement discovery responses related to witnesses and experts. *Picerni v. Summit Hotel Props. LLC*, 23-449 (La. App. 5 Cir. 5/15/24), 389 So. 3d 251, *writ denied*, 24-00764 (La. 10/8/24), 394 So. 3d 269; *Guidry v. Savoie*, 15-809 (La. App. 5 Cir. 5/26/16), 194 So.3d 1184, *writ denied*, 16-1218 (La. 10/17/16), 207 So.3d 1064. When a party discovers a new witness with knowledge of discoverable matters, he is required to make this information known to the adverse party. *Id.* This rule is based on the fact that all parties to the litigation need to know both the identity of the witnesses and the extent of their knowledge. *Id.* A party's failure to uphold this duty to timely supplement discovery responses *may* result in sanctions, such as excluding the testimony from a witness not properly disclosed to the adverse party. *Id.* In deciding whether to impose such a sanction, the trial court, as in all matters of pretrial discovery, is afforded vast discretion, and its rulings will not be overturned, absent a clear abuse of that discretion. *Id.*

The trial court has great discretion in deciding whether to receive or refuse testimony objected to on the grounds of failure to abide by the pretrial order; any doubt must be resolved in favor of receiving the information. Absent an abuse of discretion, the trial court's decision will be upheld. *Van Buren v. Minor*, supra; *Moonan v. La. Med. Mut. Ins. Co.*, *supra*.

In *Medine v. Roniger*, 03-3436 (La. 7/2/04), 879 So. 2d 706, the Louisiana Supreme Court granted a writ of certiorari to determine whether MRP panelists are prohibited from testifying as expert witnesses on behalf

11

of one of the parties in medical malpractice actions. During the trial, the plaintiff's medical expert testified, and thereafter, one of the physicians who had served on the MRP testified as a witness for the defense. During direct examination, defense counsel questioned the panelist about the expert opinion previously offered by the plaintiff's expert. Plaintiff objected, arguing that the panelist's testimony should be limited to the documents he reviewed at the time the MRP met. In finding the testimony should not be limited, the Court stated:

> [E]ven if we agreed with plaintiffs' argument that the testimony of medical review panelists should be limited to corroboration or disputation of the panel majority's expert opinion in a given case, the testimony given by the panelists in this case did not exceed that limitation because, in our view, corroboration of the panel's opinion includes defending that opinion from contrary opinions. In this case, one of the plaintiffs' primary complaints is that the panelists should not have been allowed to comment on the criticisms of defendant's treatment of Ms. Medine raised by plaintiff's expert. Indeed, we find that the panelists' comments concerning the criticisms of defendants' treatment of Ms. Medine by plaintiffs' expert were part and parcel of their testimony corroborating the panel's opinion that defendant did not violate the standard of care.
> ***
> [N]one of the provisions cited by plaintiffs restricts the testimony of the panelists once their duties as members of the panel have been discharged and the panel's written opinion has been rendered. At that point, the role of the panelist changes given the fact that, as stated above, [La. R.S.] 40:1299.47(H) and (I)(1)(a) expressly allow parties to call medical review panelists to testify at the party's cost. In all but the rarest of cases, that party will obviously be the party for which the panel ruled. In this case, that party was the defendant and the defendant sought to present the testimony of the panelists. However, this decision cuts both ways—in those cases in which the panel rules for the plaintiff, the plaintiff would doubtless be the party wishing to engage the panelists as expert witnesses. None of the statutory provisions or cases cited by plaintiffs can logically be interpreted to prohibit the testimony presented by the defendants in this case.

*Id.*, at 712-13.

In the instant case, plaintiff did not file a contradictory motion to require SFMC to "provide a written report prepared and signed by the witness" pursuant to La. C.C.P. art. 1425(B). Further, the trial court did not order either party to do so. Rather, the parties were required, by pretrial order, to "name, exchange, and file a final Will Call witness list, which specifically categorizes each witness as either "layperson, fact, or expert." This shall be done no later than three weeks before the trial date."

In compliance with the court's order, on October 4, 2024, SFMC submitted its "Will Call Witness and Exhibit List," indicating that it intended to call the following witnesses to testify: (1) plaintiff, on cross-examination (layperson/fact); (2) Teresa Massey, R.N. (fact/nursing expert); (3) Jesse Albritton, R.N. (fact/nursing expert); (4) Dr. Jonathan Hunter (expert); (5) Dr. Russell T. Lolley, Jr. (expert); and (6) Any witness listed by any other party.[2] Plaintiff also submitted a "Will Call Witness and Exhibit List," indicating that she intended to call a numerous witnesses. Notably,

_____

[2] SFMC had previously filed a "Will Call Witness and Exhibit List" on August 14, 2023. If the filing, SFMC stated that it intended to call the following witnesses to testify: (1) plaintiff, on cross-examination (layperson/fact); (2) Teresa Massey, R.N. (fact/nursing expert); (3) Jesse Albritton, R.N. (fact/nursing expert); (4) Olivia Williams, R.N. (fact/nursing expert); (5) Dr. James Jackson (expert); (6) Dr. Russell T. Lolley, Jr. (expert); and (7) Any witness listed by any other party. Subsequently, plaintiff filed her "Will Call Witness and Exhibit List," stating she intended to call numerous witnesses, including Dr. Russell T. Lolley, Jr. (on cross-examination), Dr. James M. Jackson (on cross-examination), and Dr. Jonathan D. Hunter (on cross-examination).

In response to SFMC's expert/exhibit list, plaintiff filed two motions in limine, pursuant to La. C.C.P. art. 1425. Plaintiff argued SFMC failed to timely disclose the medical expert witnesses, and she was "concerned that the defense intends to invite these witnesses to give broad, detailed opinions . . . which far exceed the boundaries of any opinion disclosed, either formally or informally, during discovery." Plaintiff requested "an order in limine restricting all defense expert testimony by prohibiting any expert witness from giving opinions different from, or in addition to, the opinions disclosed during discovery." There is no indication in the record that the trial court ruled on the motions. Nonetheless, on the morning of trial, plaintiff announce her readiness to proceed.

13

she indicated her intent to call Dr. Russell T. Lolley and Dr. Jonathan D. Hunter to testify on cross-examination as "fact" witnesses.

We find the trial court did not abuse its discretion in allowing Dr. Lolley and Dr. Hunter to testify at trial. As noted by the Court in *Medine v. Roniger*, *supra*, there is no provision in the law that "restricts the testimony of the panelists once their duties as members of the panel have been discharged and the panel's written opinion has been rendered." Thus, Dr. Hunter and Dr. Lolley were free to refute Dr. Fitzgibbons' testimony as to whether the effects of fentanyl and Dilaudid caused or contributed to plaintiff's fall.

Further, the record reveals that during the MRP proceedings, plaintiff propounded interrogatories seeking the "name and current address and phone number of each person having expert knowledge that you have consulted in connection with this matter" including "all persons consulted by you who are not retained experts . . . as well as all retained experts." The request was made before the members of the MRP were selected, and at the time of the request, SFMC responded, "No experts have been retained at this time" and "Unknown at this time as discovery is incomplete. Defendant will comply with any pretrial scheduling order concerning the listing of witnesses prior to trial." Once the medical malpractice lawsuit was filed in district court, plaintiff did not file any requests for the identities or reports of experts or any motion to compel responses to the discovery requests filed during the proceedings in district court. As stated above, SFMC complied with the trial court's pretrial order to provide its exhibit list "three weeks prior to trial," and Dr. Lolley and Dr. Hunter were listed on witness lists filed in August 2023, and October 2024.

14

Moreover, the record contradicts plaintiff's current argument that she objected to the testimony provided by Dr. Lolley and Dr. Hunter. When defense counsel questioned Dr. Lolley and Dr. Hunter concerning their opinions regarding the effects of fentanyl and Dilaudid, plaintiff did not object pursuant to La. C.C.P. arts. 1425 and 1428.[3] Further, plaintiff was afforded the opportunity to extensively cross-examine Dr. Lolley and Dr. Hunter regarding the opinions they expressed regarding fentanyl and Dilaudid. Under the facts presented in this record, the trial court did not abuse its discretion in allowing the testimony of Dr. Lolley and Dr. Hunter. Plaintiff's argument to the contrary is without merit.

Plaintiff also contends the trial court erred in allowing Nurse Allbritton to testify that Nurse Massey did not violate the appropriate standard of care, when he testified in his deposition that he did not have an opinion as to whether she violated the standard of care. According to plaintiff, Nurse Allbritton should not have been allowed to express an opinion which was "contrary to the opinion" he provided during his

---

[3] La. C.C.P. art. 1428 provides:

> A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:
>
> (1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to the identity and location of persons having knowledge of discoverable matters, and the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.
> (2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which he knows that the response was incorrect when made, or he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.
> (3) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses.

deposition. Plaintiff asserts that once counsel for SFMC learned that Nurse Allbritton was going to express an opinion as to a violation of the standard of care, counsel had a duty to supplement the answers to discovery to alert plaintiff of the change in opinion in accordance with La. C.C.P. art. 1428.

As stated above, plaintiff filed interrogatories during the MRP phase of the proceedings requesting the identities of expert witnesses expected to testify at trial. Nurse Allbritton was later identified as a witness, and plaintiff was afforded the opportunity to depose him. During the trial, Nurse Allbritton opined that Nurse Massey did not breach the applicable standard of care by leaving plaintiff alone to use the restroom. Plaintiff did not object to the testimony on the grounds that defendant failed to fulfill its duty to supplement discovery responses under La. C.C.P. art. 1428. Plaintiff's failure to object to any evidence at trial waived her right to challenge it on appeal. La. C.E. art. 103 A(1); *Osborne v. McKenzie*, 43,658 (La. App. 2 Cir. 10/22/08), 998 So. 2d 137, *writ denied*, 08-2555 (La. 1/9/09), 998 So. 2d 726; *Crisler v. Paige One Inc.*, 42,563 (La. App. 2 Cir. 1/9/08), 974 So. 2d 125; *Graves v. Riverwood Int'l Corp.*, 41,810 (La. App. 2 Cir. 1/31/07), 949 So. 2d 576, *writ denied*, 07-0630 (La. 5/4/07), 956 So. 2d 621.

Plaintiff further contends the trial court erred in denying her motion for judgment notwithstanding the verdict ("JNOV") or new trial. She argues the trial court erroneously "allowed three different defense experts to provide opinions which they had never previously expressed prior to trial[,] [and] permitting this testimony resulted in unfair prejudice to plaintiff."

A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should

be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. *Trunk v. Medical Center of La. at New Orleans*, 04-0181 (La. 10/19/04), 885 So. 2d 534; *Lewis on Behalf of Lewis v. Cornerstone Hosp. of Bossier City, LLC*, 53,056 (La. App. 2 Cir. 9/25/19), 280 So. 3d 1262; *Moore v. IASIS Glenwood Reg'l Med. Ctr.*, 51,177 (La. App. 2 Cir. 2/15/17), 216 So. 3d 187, *writ denied*, 17-0465 (La. 5/1/17), 219 So. 3d 1101.

A new trial shall be granted when the judgment appears clearly contrary to the law and the evidence. La. C.C.P. art. 1972(1). A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law. La. C.C.P. art. 1973. Although a trial judge has much discretion in determining if a new trial is warranted, an appellate court may set aside the ruling of the trial judge in a case of manifest abuse of that discretion. *Johnson v. Eur. Motors-Ali*, 48,513 (La. App. 2 Cir. 11/20/13), 129 So. 3d 697, *writ denied*, 13-2964 (La. 2/28/14), 134 So. 3d 1178.

To establish a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) the defendant breached that standard of care; and (3) there was a causal connection between the breach and the resulting injury. La. R.S. 9:2794. Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. *Schultz v. Guoth*, 10-0343 (La. 1/19/11), 57 So. 3d 1002, *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880; *Pfiffner v. Correa*, 94-0924, 94-0963, 94-0992 (La.

10/17/94), 643 So. 2d 1228. The mere fact that an injury occurred does not raise a presumption that the physician was negligent. *Van Buren v. Minor*, *supra*; *Hays v. Christus Schumpert N. Louisiana*, 46,408 (La. App. 2 Cir. 9/21/11), 72 So. 3d 955.

Appellate review of a trial court's findings in a medical malpractice action is limited. It is well settled that a court of appeal may not set aside a jury's finding of fact in the absence of manifest error or unless it is clearly wrong, and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Rosell v. ESCO*, 549 So.2d 840 (La. 1989); *Van Buren v. Minor*, *supra*. In reviewing a factfinder's factual conclusions, an appellate court must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusion, and the finding must be clearly wrong. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Johnson v. Morehouse Gen. Hosp.*, 10-0387 (La. 5/10/11), 63 So. 3d 87; *Van Buren v. Minor*, *supra*.

Where the testimony of expert witnesses differs, it is the responsibility of the trier of fact to determine which evidence is most credible. *Van Buren v. Minor*, *supra*; *Morris v. Rainwater*, 51,018 (La. App. 2 Cir. 1/11/17), 218 So. 3d 226, *writ denied*, 17-0414 (La. 5/1/17), 220 So. 3d 744. Where there are conflicting expert opinions concerning the defendant's compliance with the standard of care, the reviewing court will give great deference to the conclusions of the trier of fact. *Van Buren v. Minor*, *supra*; *Morris v.*

*Rainwater*, *supra*; *Prine v. Bailey*, 45,815 (La. App. 2 Cir. 12/15/10), 56 So. 3d 330.

In the present case, the jury was presented with conflicting expert opinions and testimony regarding whether SFMC breached the standard of care. Dr. Fitzgibbons testified that the combined effects of fentanyl and Dilaudid "probably" caused plaintiff to experience disorientation, drowsiness, and dizziness for "more than an hour after receiving" the medications, and plaintiff was "probably still very sleepy" when she arrived in the ASU. Consequently, Dr. Fitzgibbons opined that it was not safe to leave plaintiff alone in the restroom because she was likely still under the influence of fentanyl and Dilaudid. Nurse Stephanie Chance testified that patients who have received certain narcotics are not ordinarily left alone in the restroom because they can be unsteady or under the influence of the medications.

The MRP opinion was also introduced into evidence, and Dr. Lolley and Dr. Hunter testified that the panel examined plaintiff's entire medical record and was aware that plaintiff had received Propofol, fentanyl, and Dilaudid over approximately a two-hour period. Dr. Lolley and Dr. Hunter explained that the medical records revealed that plaintiff was alert and oriented and did not appear to be under the influence of the drugs administered to her. Further, Nurse Jesse Allbritton testified that Nurse Massey did not breach the applicable standard of care by leaving plaintiff, who was awake and alert, alone in the restroom.

Following deliberations, the jury returned a verdict in favor of SFMC. The first question posed on the jury verdict form was as follows:

19

Do you find that the Plaintiff, Alice Clark, proved by a preponderance of the evidence that the treatment rendered to Alice Clark by St. Francis Medical Center, fell below the standard of care ordinarily practiced by hospitals under similar circumstances?

The jury responded, "No." Thereafter, the trial court signed a judgment based upon the jury's verdict and dismissed plaintiff's claims.

We have reviewed the record in its entirety, and we cannot say the jury verdict was manifestly erroneous or clearly wrong. The jury was presented with testimony and expert opinion that SFMC breached the standard of care. However, the jury was also presented with testimony and expert opinion that SFMC's treatment of plaintiff did not constitute a breach in the standard of care. There were two permissible views of the evidence, and the jury's choice between them cannot be manifestly erroneous or clearly wrong. The issue to be resolved by this Court is not whether the jury was right or wrong, but whether the jury's conclusion was a reasonable one. Further, we cannot say the facts and inferences point so strongly and overwhelmingly in favor of plaintiff that reasonable persons could not arrive at a contrary verdict as to warrant granting a motion for JNOV or new trial.

## CONCLUSION

For the reasons stated above, we affirm the trial court's judgment in favor of defendant, St. Francis Medical Center, Inc., dismissing plaintiff's claims. All costs of these proceedings are assessed to plaintiff, Alice Clark.

**AFFIRMED.**

20